UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGEND D. BROOKS,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SERGEANT RUIZ, et al.,<br><br>　　　　　　　Defendants. | Case No. 2:21-cv-02010-AB-PD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO BIFURCATE** |

This Report and Recommendation is submitted to the Honorable André Birotte Jr., United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.  Before the Court is the motion filed by Defendants Deputy Julian Sanchez ("Sanchez"), Deputy Darren W. Lass, Jr. ("Lass"), and Sergeant Robert Ruiz ("Ruiz") to bifurcate the administrative remedy exhaustion issues for a hearing under *Albino v. Baca,* 747 F, 1172 (9th Cir. 2014).  Dkt. No. 183.[1]  For the reasons set forth below, it is recommended that the motion be denied.

---

[1] On November 18, 2025, the motion was referred to the undersigned pursuant to General Order 05-07, page 3, number 17.  Dkt. No. 187.

## I.   Procedural Background

Plaintiff Legend D. Brooks ("Plaintiff"), proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment excessive force claim against Sanchez, Lass, Ruiz and Lieutenant Antonio Fascio, and a Fourteenth Amendment due process claim against Operations Assistant Stephanie E. Castaneda.  Dkt. Nos. 1, 107, 108.  The Court granted motions to dismiss in part, dismissing the official-capacity claims, the due process claims, and Castaneda, and denying dismissal of the excessive force claims.  Dkt. Nos. 52, 113, 122, 126, 132.

Sanchez, Lass, Ruiz, and Fascio moved for summary judgment on their affirmative defenses of failure to exhaust administrative remedies and failure to comply with the Prison Litigation Reform Act ("PLRA"), qualified immunity, reasonable use of force in defense of self and others, causation, and failure to state a claim.  Dkt. Nos. 157 to 157-25, 159, 160, 167.  The Court issued a Report and Recommendation (the "Report") that summary judgment on the issue of exhaustion be granted as to Fascio, because neither of Plaintiff's grievances made any reference to actions allegedly taken by Fascio, and that he be dismissed from this action.  Dkt. No. 178.  As to Sanchez, Lass and Ruiz, the Court recommended that summary judgment on the issue of exhaustion be denied because they failed to meet their initial burden to show that there was an available administrative remedy and that Plaintiff did not exhaust that remedy.  *Id.* at 19-21.  The Court further found that there was a triable issue of fact as to Plaintiff's Eighth Amendment excessive force claim against Sanchez, Lass, and Ruiz.  *Id.* at 21-37.

Sanchez, Lass and Ruiz did not file Objections to the Report.  The District Judge issued an Order Accepting the Report and Adopting Findings, Conclusions and Recommendations of United States Magistrate Judge.  *See* Dkt. No. 181.

## II.     The Motion

Sanchez, Lass and Ruiz seek bifurcation of the PLRA, 42 U.S.C. § 1997e(a) exhaustion issue for resolution by the Court as trier of fact, separate from any jury trial on the merits.  Dkt. No. 183.  Under *Albino*, 747 F.3d at 1170-71, district courts have the authority to resolve disputed factual issues regarding PLRA exhaustion through a bench trial.  Sanchez, Lass and Ruiz contend that the Report acknowledges material factual disputes regarding exhaustion  Dkt. No. 183-1 at 6.  They argue that there remains an inquiry into whether Plaintiff procedurally complied with the administrative grievance process, and they intend to explore questions such as whether Plaintiff filed grievances within required timeframes, whether Plaintiff followed prescribed procedural steps, whether any grievances were improperly rejected or ignored by administrative personnel, and whether Plaintiff appealed through all available levels of review.  *Id.* at 5-6.

The Court issued an order on November 18, 2025, providing Sanchez, Lass and Ruiz an opportunity to file any materials they contend are relevant to the instant motion that were not submitted with their summary judgment motion.  Their deadline to submit those materials was November 25, 2025.  Dkt. No. 188.   They did not submit any additional materials.

## III.    Pertinent Facts Re: Administrative Exhaustion[2]

### A.     Plaintiff's Grievances Related to the Incident on March 14, 2020

On March 17, 2020, three days after the incident, Plaintiff's mother filed a third-party grievance with the LASD.   The text of the third-party grievance is as follows:

---

[2] The facts are taken from the parties' submissions on summary judgment.  *See* Dkt. Nos. 157 to 157-25, 159, 160, 167, 169, 170, 172, 174.

> On March 17, 2020 at approximately 1130 hours, Inmate Legend told his mother, Ms. Robinson, via phone, that on March 15, 2020, at an unknown time, he was handcuffed and sitting on a table. He said he was attacked by Deputy Sanchez, (NFD), Sergeant Luis [sic], (NFD), and 2-3 other deputies. Deputy Sanchez walked up to Inmate Legend and said, "What are you doing?" Deputy Sanchez then punch [sic] Inmate Legend in the nose. Sergeant Luis then put Inmate Legend in a headlock while Deputy Sanchez repeatedly said, "He's a big guy," over and over. They [sic] deputies broke Inmate Legend's nose and gave him two black eyes. He also has not showered in six days.

Dkt. No. 157-12 at 13.

Two days later, Plaintiff filed his own grievance regarding this incident. The text of Plaintiff's grievance is as follows:

> On Saturday, March 14, 2020 around 5:00 to 6:00p.m., I was in Tower 2 231, escorted by Sgt. Ruiz and deputy Sanchez and his partner to medical while waiting in the first pod for attention the nurse said wait in the one next to it once I sat down Deputy Sanchez assaulted me broke my nose while I was handcuffed behind my back he put me in a headlock hitting me in my face repeatedly, Sgt. Ruiz shouting out orders like "keep punching him this is what you have to do he's a big dude," telling his partner to help him out, next thing I knew I woke up with my nose bloody mask on my face tight.

Dkt. No. 169 at 11, 13.

On March 25, 2020, an LASD "Interim Status Notification" was issued regarding the "Force Investigation." Dkt. No. 157-12 at 14. The "Comments" section stated:

> "Your grievance is being internally investigated and will be completed by the Sheriff's Department's established time frames. Depending on the complexity of the investigation, updates on the status of your grievance may not be available. You may be contacted for further information and will receive a notification when the investigation is complete."

*Id.*

4

On April 10, 2020, Sergeant Ornelas prepared a report to Lt. Fascio regarding Plaintiff's Third-Party Grievance concerning the March 14, 2020 incident involving the use of force by employees Lass, Ruiz, and Sanchez. Dkt. No. 157-12 at 9. Sergeant Ornelas was tasked with investigating the incident described in Plaintiff's mother's grievance that her son was "attacked by Deputy Sanchez, Sergeant Luis and 2 to 3 other deputies." *Id*. Sergeant Ornelas reviewed Lt. Fascio's interview with Plaintiff taken immediately after the incident, CCTV video recordings, incident reports, supplemental reports, and he contacted Defendants. *Id*. at 10-11. Under "Findings", Sergeant Ornelas noted that he reviewed the CCTV of the incident, which showed that Plaintiff was uncooperative and assaultive towards staff. *Id*. at 11. Sergeant Ornelas recommended closing this grievance with an "Employee Conduct Appears Reasonable" disposition. *Id*. at 12. He found clear and convincing evidence that the allegation in question was not supported by CCTV, or the written statements given by custody personnel. *Id*. He found all conduct exhibited by all of the personnel who came in contact with Plaintiff appeared to be in compliance with procedures, policies, and training. *Id*.

On May 21, 2020, Lt. Fascio prepared a report to Captain Roel D. Garcia regarding Plaintiff's Third-Party Grievance concerning the March 14, 2020 incident involving the use of force by employees Lass, Ruiz, and Sanchez. Dkt. No. 157-12 at 7. Under "Findings", it was noted that a review of Sergeant Ornelas' memorandum revealed all aspects of Plaintiff's allegations had been thoroughly investigated. A use of force incident did occur involving Plaintiff after he became assaultive. *Id*. at 8. Plaintiff sustained injuries to his face as a result of the incident. *Id*. Plaintiff's allegation that he was placed in a "headlock" by Sergeant Ruiz was completely unfounded. *Id*. Sergeant Ornelas determined all involved IRC custody personnel's conduct was proper, reasonable, and within policy. *Id*.

On July 21, 2020, a "Notification of Disposition" was issued denying Plaintiff's mother's grievance. *Id.* at 15.  Under "Comments" it states: "The grievance has been investigated; however, the Sheriff's Department was unable to substantiate that the described employee(s) violated any Department policies and procedures." *Id.*

On August 5, 2020, Plaintiff filed a Level 1 Appeal of the grievance decision. *Id.* at 17.  On August 20, 2020, the grievance appeal at Level 1 was denied. *Id.*  The Reviewer Comments stated: "Evidence from closed-circuit television (CCTV), coupled with written documentation does not support Inmate Legends contentions." *Id.*

On August 24, 2020, Plaintiff filed a Level 2 Appeal. *Id.* at 22.  Plaintiff stated he was unsatisfied with the response because the reviewer of the appeal did not consider his injuries or the evidence on camera. *Id.*  On September 23, 2020, Plaintiff's grievance on appeal at Level 2 was denied. *Id.* at 17.  The Reviewer Comments stated: "This incident was investigated by multiple levels of supervision.  The evidence and documentation does not support Inmate Legends statements." *Id.*

### B.    LASD Grievance Procedure

The LASD maintains a grievance procedure for inmates. Dkt. No. 159-2, Defendants' Statement of Undisputed Facts ("DSUF") Nos. 7, 10, 32, 35, 54, 57, 75, 78.  This procedure is laid out on the inmate grievance form where Plaintiff submitted his own grievance on March 19. Dkt. No. 169 at 12.  The form states that "[a]ll inmate grievances must be as complete as possible," and does not provide any further specificity on the level of detail required in an inmate grievance. *Id.*  Inmates are also advised they can only submit one appeal per grievance, which goes through a two-level process.  Dkt. No. 157-12 at 15.

6

## IV.   Discussion

Sanchez, Lass, and Ruiz seek a bench trial on the PLRA exhaustion issues under *Albino,* 747 F.3d 1166.  Dkt. No. 183-1.  They contend that the Report "acknowledges material factual disputes" regarding exhaustion, and they seek to conduct an inquiry focused on procedural compliance with the administrative grievance process, *i.e.*, whether Plaintiff filed grievances within required timeframes, whether Plaintiff followed prescribed procedural steps, whether any grievances were improperly rejected or ignored by administrative personnel, and whether Plaintiff appealed through all available levels of review.  *Id.* at 5-6.

The Report does not "acknowledge[] material factual disputes" regarding exhaustion.  It does not acknowledge material factual disputes regarding whether Plaintiff filed grievances within required timeframes, whether Plaintiff followed prescribed procedural steps, whether any grievances were improperly rejected or ignored by administrative personnel, or whether Plaintiff appealed through all available levels of review.  Sanchez, Lass and Ruiz presented no evidence in the summary judgment briefing, or subsequently, that Plaintiff did not comply with the administrative grievance process, that his grievances were tardy, or that he failed to appeal through all applicable levels of review.  In the Report, the Court found that Sanchez, Lass, and Ruiz did not meet their initial burden demonstrating that an available administrative remedy existed, and that Plaintiff failed to fully exhaust that remedy. *See* Dkt. No. 178.  The Court found sufficient record evidence regarding Plaintiff's exhaustion of administrative remedies and denied Defendants' request for an *Albino* hearing.  *Id.* at 21, fn. 10.

### A.    Legal Standards for Exhausting Administrative Remedies

The PLRA requires a plaintiff who is imprisoned to exhaust available administrative remedies before bringing into federal court an action challenging prison conditions.  *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  The prisoner must reach "proper exhaustion," which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation, internal quotation marks, and italics omitted).  The prisoner must comply "with the system's critical procedural rules."  *Id.* at 90–91.  The prisoner exhausts a multi-level grievance procedure only when he or she completes the final level of review.  *See Brown v. Valoff*, 422 F.3d 926, 934, 937–38 (9th Cir. 2005) (under *Booth v. Churner*, 532 U.S. 731, 739 (2001), "prisoner plaintiffs must pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to the complaint"; original emphasis).  "Exhaustion requirements apply based on when a plaintiff files the operative complaint, in accordance with the Federal Rules of Civil Procedure."  *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017) (citations omitted); *accord Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022).

"'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'"  *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Jones*, 549 U.S. at 218); *see also Fuqua v. Ryan*, 890 F.3d 838, 845 (9th Cir. 2018) (explaining "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.")  (quoting *Jones*, 549 U.S. at 218)).  When prison officials choose to decide an inmate's grievance on the

merits rather than enforce a procedural rule, the purposes of the PLRA exhaustion requirement have been fully satisfied as "prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed." *Reyes*, 810 F.3d at 658. An inmate's compliance with the PLRA exhaustion requirement as to some, but not all claims does not warrant dismissal of the entire action. *Jones*, 549 U.S. at 219–24; *Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005) (rejecting a total exhaustion requirement and holding that where a prisoner's complaint contains both exhausted and unexhausted claims, a district court should dismiss only the unexhausted claims).

Exhaustion is an affirmative defense as to which the defendant bears the burden of proof. *Jones*, 549 U.S. at 212–17. A defendant moving for summary judgment on exhaustion grounds must carry an initial burden of showing that an available administrative remedy existed, and that the prisoner did not exhaust that remedy. *Albino,* 747 F.3d at 1172. Once the defendant has carried that burden, the prisoner must come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). The ultimate burden of proof remains with the defendant. *Id.* "[P]arties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." *Perttu v. Richards*, 605 U.S. 460, 458 (2025).

A prisoner need not pursue exhaustion "when circumstances render administrative remedies effectively unavailable." *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (citations and quotations omitted); *see Ross v. Blake*, 578 U.S. 632, 639 (2016) ("the remedies must indeed be 'available' to the prisoner") (citation omitted). A remedy is effectively unavailable if: (1) "it operates as a simple dead end—with officers unable or consistently unwilling

9

to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

### B.  Plaintiff Exhausted His Administrative Remedies as To Sanchez, Lass, and Ruiz

The record before the Court demonstrates that Plaintiff exhausted all administrative remedies before filing the Complaint.  Dkt. Nos. 1 at 10-33; 157-12; 169.  His third-party grievance alleged that he was attacked by Sanchez, Ruiz, and "2-3 other deputies."  Dkt. No. 157-12 at 13.  Specifically, Plaintiff claimed that Sanchez punched Plaintiff in the nose while Ruiz put Plaintiff in a headlock.  *Id.*  Plaintiff's own grievance similarly alleged that Sanchez broke his nose while an unspecified person put Plaintiff in a headlock, and it directly referenced Lass as Sanchez's partner.  Dkt. No. 169 at 11, 13.

#### 1.  Sanchez, Lass, and Ruiz Did Not Meet Their Initial Burden of Showing that an Available Administrative Remedy Existed and That Plaintiff Did Not Exhaust that Remedy

Sanchez, Lass, and Ruiz contend that Plaintiff failed to fully complete the administrative grievance process as to any of them before filing this Complaint.  Dkt. No. 158-1 at 17.  Regarding Sanchez, Defendants simply claim that both grievances reference Plaintiff being hit while sitting in a chair, when he was in fact not sitting in a chair.  *Id.*  Combining this with their Reply, Defendants appear to argue that Plaintiff did not make his grievances in good faith.  Dkt. No. 171-2 at 57-58.  However, as Plaintiff stated in his Opposition, his third-party grievance does in fact state that Plaintiff was sitting on a table when he was allegedly attacked, while his own grievance made no mention of a chair, simply that he "sat down."  Dkt. No.

169 at 27. Defendants appear to have relied only on the summarized information in the inmate requests platform Dkt. No. 157-12 at 2, rather than the more detailed description in the actual third-party grievance. *Id.* at 13.

The Court on summary judgment reviewed the videos which showed that Plaintiff sat down on the center partition of Station #7 facing Defendants and placed his right foot on the stool. Ex. 3, Medical Staging – Middle at 00:27-00:28, Medical Staging – Right at 00:26-00:27. Sanchez gestured toward the stool with his right arm, then Lass and Sanchez moved towards Plaintiff and the use of force began. Ex. 3, Medical Staging – Middle at 00:28-00:29, Medical Staging – Right at 00:27-00:28. Defendants contention that Plaintiff failed to exhaust his administrative remedies based on a contradiction with the video evidence is belied by the record.

Lass contends that neither of Plaintiff's grievances referenced him. Dkt. No. 158-1 at 17. Although neither grievance directly named Lass, it is clear from the text of each that Plaintiff alleged misconduct by Lass. Plaintiff's third-party grievance claimed that he was attacked by "2-3 other deputies" beyond Sanchez and Ruiz, Dkt. No. 157-12 at 13, while Plaintiff's own grievance referenced Lass as Sanchez's partner. Dkt. No. 169 at 11-13. The claim that the grievances against Lass were defective because they failed to identify Lass by name ignores the fact that the prison adjudicated Plaintiff's grievances—including as to Lass—on their merits rather than on procedural grounds. Dkt. No. 157-12 at 5. Lass therefore cannot later claim that the grievances were defective simply because of Plaintiff's failure to comply with a procedural rule. *See Reyes*, 810 F.3d at 658 ("When prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served . . . ."). The *Reyes* court held that dismissing the inmate's claim for failure to exhaust under these circumstances does not advance the statutory goal of avoiding unnecessary interference in prison

11

administration, rather it prevents the courts from considering a claim that has already been fully vetted within the prison system. *Reyes*, 810 F.3d at 658.

Ruiz argues that Plaintiff's grievances made no mention of his conduct. Dkt. No. 158-1 at 17. In fact, Ruiz was mentioned by name in both the third-party grievance, Dkt. No. 157-12 at 7, and in Plaintiff's own grievance. Dkt. No. 169 at 11-13.

The record is clear that Plaintiff appealed his grievances to Level 1 and Level 2. Dkt. No. 157-12 at 17, 22. Plaintiff's Appeals were denied at the first and second Levels. *Id.* at 17. Inmates are advised they can only submit one appeal per grievance, which goes through a two-level process. Dkt. No. 157-12 at 15. Plaintiff completed the two-level review process and therefore exhausted his administrative remedies. In addition, in reviewing Plaintiff's grievances, the Sheriff's Department completed separate "Result of Inmate Grievance Against Staff Review" forms for Sanchez, Lass, and Ruiz. Dkt. No. 157-12 at 4-6. Each review was marked with a disposition of "Employee Conduct Appears Reasonable" rather than the highest level of "Exoneration." *Id.* Among the descriptions of the "Exoneration" disposition is that the "allegation giving rise to the investigation was demonstrably false and brought in demonstrable bad faith." *Id.* In contrast, the "Appears Reasonable" disposition simply states that the "[r]eview indicated the employee's actions appear to be in compliance with procedures, policies, guidelines or training." *Id.*

Defendants' initial burden of proof requires a showing that LASD had a grievance system that was available to Plaintiff and that Plaintiff failed to properly file grievances. *See Albino*, 747 F.3d at 1171–72. The evidence before the Court demonstrates that LASD had a grievance system, and that Plaintiff filed grievances and properly exhausted his claims. Defendants have failed to present any *evidence* that Plaintiff failed to properly file grievances.

12

Further, no evidence has been presented to the Court that Plaintiff failed to comply with the administrative grievance process, that his grievances were tardy or that he failed to appeal through all applicable levels of review. The Court provided Defendants with an opportunity to submit further materials relevant to the Motion, but they failed to do so. The Court finds that no factual disputes exist concerning exhaustion. Without evidence demonstrating the existence of a material factual dispute, the District Judge need not convene an evidentiary hearing.

> If exhaustion were an element of plaintiff's claim rather than an affirmative defense, plaintiff might well have to "prove up" his allegations by submitting his evidence . . . But plaintiff does not bear the burden of proof as to exhaustion, even when he has assumed and satisfied the burden of production as to the practical unavailability of administrative remedies. *Albino*, 747 F.3d at 1172. An evidentiary hearing is only necessary where summary judgment is denied on grounds that material factual disputes preclude the entry of summary judgment.

*Hammler v. Davis*, 2017 WL 735737, at *10 (E.D. Cal. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1093968, (E.D. Cal. Mar. 23, 2017).

Because administrative exhaustion is an affirmative defense, and because the evidence presented on summary judgment must be viewed in the light most favorable to the nonmoving party, the record in this case compels the conclusion that Defendants have failed to meet their burden on the exhaustion issue. *Albino*, 747 F.3d at 1176.

Further, based on the evidence presented to the Court, the Court finds that Plaintiff has exhausted all available administrative remedies. For these reasons, the Court recommends that Defendants' motion to bifurcate bench trial on PLRA exhaustion issues be denied.

13

## V.     Recommendation

It is therefore recommended that the District Judge issue an order:

(1) accepting this Report and Recommendation;

(2) finding that Plaintiff has exhausted all available administrative remedies; and

(3) denying Defendants' Motion to Bifurcate Bench Trial on Prison Litigation Reform Act ("PLRA") exhaustion issues.

DATED:  December 4, 2025

_Patricia Donahue_

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

14

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the Dkt. number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.