**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
E-mail: cmayne@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff Legend Brooks*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LEGEND BROOKS,

Plaintiff,

vs.

SERGEANT RUIZ, et al.,

Defendants.

Case No. 2:21-cv-02010-AB-PDx

*Assigned to*:
District Judge André Birotte Jr.

**JOINT STATUS REPORT**

Status Conference
Date: October 9, 2026
Time: 10:00 a.m.
Ctrm: 7B

Pursuant to the Court's September 25, 2026 Order (Dkt. No. 205), Plaintiff Legend Brooks and Defendants Deputy Julian Sanchez, Deputy Darren W. Lass, Jr., and Sergeant Robert Ruiz submit this Joint Status Report. Counsel met and conferred by telephone on September 30, 2026. The parties agree on the claim that remains for trial but disagree about the schedule, the need for additional discovery, and the need for expert discovery. Each party's position is set out below.

## I. PROCEDURAL HISTORY

Plaintiff alleges in the Complaint that on March 14, 2020, while he was held at Twin Towers Correctional Facility, Defendants used excessive force against him in violation of the Eighth Amendment (Claim One). He also alleges that Defendant Castaneda violated his Fourteenth Amendment due process rights by obstructing the

grievance process (Claim Two). (Dkt. No. 1.) Plaintiff later substituted Deputy Darren W. Lass, Jr. and Lieutenant Antonio Fascio for two of the Doe defendants. (Dkt. Nos. 107, 108.)

On Defendants' motions to dismiss, the Court dismissed the official-capacity claims, Claim Two, and Defendant Castaneda. It denied dismissal of the excessive force claim. (Dkt. Nos. 52, 126, 132.)

Plaintiff litigated the case pro se through the close of discovery. Discovery closed on November 8, 2024. (Dkt. No. 145.) Defendants Sanchez, Lass, Ruiz, and Fascio then moved for summary judgment. (Dkt. No. 157.) The Magistrate Judge recommended granting summary judgment for Fascio on exhaustion and dismissing him with prejudice, and denying summary judgment as to Sanchez, Lass, and Ruiz on all claims and affirmative defenses. (Dkt. No. 178 at 19-21, 37.) The Court adopted the Report and Recommendation. (Dkt. No. 181.)

Defendants Sanchez, Lass, and Ruiz then moved to bifurcate the exhaustion issue for a separate bench trial. (Dkt. No. 183.) The Magistrate Judge recommended denying the motion and finding that Plaintiff exhausted all available administrative remedies. (Dkt. No. 192 at 13-14.) The Court adopted that recommendation on January 13, 2026. (Dkt. No. 199.)

The parties attended a settlement conference before Magistrate Judge Mircheff through the Prisoner Settlement Program on December 16, 2025. The case did not settle. (Dkt. No. 194.) On April 27, 2026, the Court located pro bono counsel for Plaintiff (Dkt. No. 201), and counsel appeared on June 4, 2026 (Dkt. No. 203).

## II. REMAINING CLAIMS AND DEFENSES

The only claim remaining for trial is Plaintiff's Eighth Amendment excessive force claim under 42 U.S.C. § 1983 against Defendants Sanchez, Lass, and Ruiz. Both parties request a jury trial.

**Plaintiff's position**

Plaintiff's position is that trial will focus on whether excessive force was

used by Defendants against Mr. Brooks on March 14, 2020, at Station 7 of the Twin Towers Inmate Reception Center. The question for the jury is whether Defendants applied force in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. (Dkt. No. 178 at 22, 25 (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).) Plaintiff was double-handcuffed behind his back throughout. (Id. at 4, 27.) About one second after Plaintiff sat down, and without any order to sit on the stool, Sergeant Ruiz ordered Deputies Lass and Sanchez to remove him from the partition. (Id. at 29, 31-33.) Deputy Sanchez punched Plaintiff in the face before the takedown, which he admits in his own report, and Deputy Lass punched Plaintiff in the face while holding Plaintiff's lowered head with one hand. (Id. at 7-8, 29, 31.) After Plaintiff was on the floor, and before his legs were secured, Deputy Lass punched him twice more, as the video shows. (Id. at 8, 31, 33.) Both deputies then kept their body weight on Plaintiff for several minutes, with Deputy Sanchez using a knee to pin Plaintiff's arm. (Id. at 7-9, 29, 33.) Sergeant Ruiz directed the deputies throughout, told them to keep punching, and had them put a spit mask on Plaintiff that obstructed his breathing. (Id. at 6, 11 n.9, 28, 31, 33.)

Plaintiff's position is that exhaustion is no longer at issue because the Court adopted the finding that Plaintiff exhausted all available administrative remedies. (Dkt. Nos. 192, 199.)

Plaintiff does not agree with Defendants' statement of the affirmative defenses that remain for trial and reserves the right to address those defenses in the proposed Final Pretrial Conference Order.

**Defendant's position**

The records show that on March 12, 2020, Mr. Brooks was sent to the County jail from the State Prison to attend court hearings in Los Angeles. The evidence shows that Mr. Brooks was classified as "highly dangerous" and requiring special handling procedures. Unfortunately, the State Prison did not notify the

Sheriff's Department of the scope of this danger, nor of Mr.Brooks's health care history.

On March 14, 2020, at the Twin Towers Correctional Facility in Los Angeles, Mr. Brooks called a "Man Down" and misrepresented that he had chest pains and needed medical attention.

The Defendants took Plaintiff to the medical station. They did not prejudge the claim of chest pains. They did not know that Mr. Brooks was not telling the truth. They did not know that in State Prison, both before and after the March 14, 2020 incident, Mr. Brooks had a lengthy history of identical incidents, and had engaged in numerous assaults and threats to guards and health care providers.

The intent of the deputies and their sergeant was to get Mr. Brooks over to the nurses' stations for evaluation.

The record shows that Sgt. Ruiz made specific accommodations for Brooks which increased the safety risk that Mr. Brooks posed to the deputies. As a consequence, Plaintiff assaulted and severely injured Defendant Deputy Darren W. Lass. Dkt No. 157-6. The parties dispute Plaintiff's characterization of "double hand cuffs." Mr. Brooks was not handcuffed with two sets of cuffs on each wrist. There were two sets of handcuffs that were cuffed to each other. The cuff on one set was attached to the left wrist. The cuff on the second set was attached to the right wrist. This increased the risk to the deputies, because it allowed Mr.Brooks to step over the cuffs and place his arms in front of him.

There is unrebutted evidence of identical encounters in different settings, including hospitals. Dkt Nos. 159-3, pp. 4-20; 160-10 to 160-19. The Court is referred to the diagnosis and summary of the pre- and post-incident history, described in the Declaration of Jay N. Schapira, M.D., filed under seal, at Dkt No. 159-3, p. 20. This evidence is relevant to the credibility of Plaintiff and therefore to liability, and the damages claim.

Mr. Brooks was an experienced inmate. He knew the significance of responding or not responding to instructions as to where and how to sit at the nurses' station. The situation escalated at the nurse's station, when Mr. Brooks, who had already broken his cell door glass and made threatening statements to deputies, refused to be seated, positioned himself on a partition, blocking the deputies' view of civilian medical staff, and positioned himself to step over the cuffs, which had been loosely secured to accommodate his claim of chest pains. He then attempted to head-butt Deputy Lass. Deputy Lass was severely injured in the encounter and later underwent surgery for his injuries.

The defendants' use of force was objectively reasonable under *Graham v. Connor* standards and California's POST training protocols. The force was employed only in response to Brooks's active resistance and immediate threat to officer and civilian/nurse safety. All force ceased immediately upon Brooks's compliance.

The defendants will assert the following affirmative defenses: Qualified Immunity, Estoppel, Self-defense and defense of others, Good faith and no intent to deprive Plaintiff of his Consitutitonal rights, unclean hands, Plaintiff's contributory negligence, and all causations defenses including lack of causation by defendants (eg. Current claims of ongoing pain in areas that were subsequently injured in other incidents), apportionment of damages due to negligence of third party state prison and actions of plaintiff, intervening causation, Plaintiff's failure to mitigate damages, and Plaintiff's assumption of risk.

## III. DISCOVERY

**Plaintiff's position**

Plaintiff's position is that fact discovery should be reopened for one limited purpose: to depose Defendants Sanchez, Lass, and Ruiz. Defendants do not oppose these depositions. Plaintiff did not depose any Defendant while he was litigating the case pro se from prison. Plaintiff does not seek these depositions for tactical

advantage. Their purpose is to fix each Defendant's account of the incident on the record before trial. A developed record will give both sides a clearer picture of the evidence, which may open a realistic path to settlement. If the case does not settle, the depositions will make trial more orderly and predictable, because the parties and the Court will know in advance what each Defendant will say rather than hearing it for the first time on the stand. Plaintiff proposes that the three depositions take no more than six hours in total and be completed by December 11, 2026. This is a very narrow request, and Plaintiff does not seek to delay trial to accomplish it. The incident occurred more than six years ago, which is part of the reason Plaintiff is anxious to set a trial date sooner than later.

Plaintiff opposes reopening discovery for the medical records subpoenas Defendants propose. Plaintiff limits his damages to the physical pain and suffering and garden-variety emotional distress caused by the March 14, 2020 incident. Whatever position Plaintiff took while litigating pro se, Plaintiff will not claim any continuing or permanent physical injury, and his physical damages are limited to the injuries documented after the incident and the recovery from them. Updated medical and psychiatric records therefore bear on no claim in the case. Defendants already obtained an order compelling Plaintiff's records from three outside hospitals (Dkt. No. 147), and they filed Plaintiff's medical records from 2015 through 2024 in support of their summary judgment motion. (Dkt. No. 178 at 3 n.3; Dkt. Nos. 159-3 to 159-9.)

Plaintiff does not believe expert discovery is necessary, and no expert deadlines should be set.[1] This case is about a beating that lasted a few minutes and

[1] If the Court allows expert discovery, it should be expedited. Defendants have had their police practices expert and cardiologist since at least December 2024, when they filed those experts' declarations (Dkt. Nos. 157-8, 159-3), and they have had Plaintiff's medical records for years. Plaintiff proposes that Defendants serve expert disclosures by November 20, 2026; that Plaintiff serve any rebuttal disclosures two weeks later, by December 4, 2026; and that expert discovery close on December 18, 2026. Plaintiff will not designate affirmative experts. This schedule keeps the March 15, 2027 trial date.

was captured on video. Jurors can decide from the video and the testimony of the people who were in the room whether punching a man who was handcuffed behind his back, and punching him again after he was on the floor, was a good-faith effort to restore order or force used maliciously and sadistically to cause harm. That question calls for no specialized knowledge. Damages do not require expert testimony either. Plaintiff does not claim post-traumatic stress disorder or any other psychiatric or psychological injury, and he will not offer expert testimony on any element of damages. A claim for garden-variety emotional distress does not put a plaintiff's mental condition in controversy, so a psychiatric expert would have nothing to address. Defendants' real purpose for a psychiatric expert appears to be their theory that Plaintiff is not credible, based on the diagnosis described in the sealed Schapira declaration. (See Dkt. No. 159-3 at 20.) Expert opinion on a witness's credibility is generally inadmissible, and the jury can judge Plaintiff's credibility for itself. Because Plaintiff claims no continuing or permanent physical injury, an orthopedic expert would also have nothing to address. Any medical question is limited to the injuries documented after this incident and Plaintiff's recovery from them.

Defendants' request also comes late. The Court's October 2022 scheduling order provided that expert deadlines could be set later "[i]f appropriate." (Dkt. No. 59 at 6 n.1.) It directed that the parties' January 2023 status reports state whether any party planned a summary judgment motion that would depend on expert testimony, "disclose what kind of expert testimony is anticipated," and "propose a schedule to allow the opposing party to conduct expert-related discovery." (Id. at 9.) *Defendants' status report did not do so*. (Dkt. No. 65 at 3.) At that time, Defendants described the issue in the case as whether Defendants "used force and, if so, if the use of force was appropriate." (Id. at 2.) Defendants then retained a police practices expert and a cardiologist and relied on both in their summary judgment motion without asking the

Court to set expert deadlines. They only seek them now, more than six years after the incident and only after Plaintiff obtained counsel and asked for a trial date.

**Defendants' position**

The Court has not set a deadline for expert designation or expert discovery. As a result, the defense requests an order setting the first deadlines for expert designation, disclosure and discovery. On June 4, 2026, Plaintiff's counsel corresponded with defense counsel. On June 7, 2026, defense counsel personally prepared a DropBox transfer of all filings in this case, including unredacted copies of all filings under seal. These included the Declarations of police practices expert Paul Cappitelli, cardiologist Jay N. Schapira, M.D., and the opinion testimony contained in the declarations of Deputy Darren Lass, Lt. Antonion Fascio (ret.), Deputy Julian Sanchez, and Sergeant Robert Ruiz. Both counsel met on Zoom on June 8, 2026 and have had subsequent conversations. The subject and identities of defense experts listed above, and the intent of the defense to retain a psychiatric expert and an orthopedic expert, have been discussed.

Although Plaintiff's counsel states, "Plaintiff limits his damages to the physical pain and suffering and garden-variety emotional distress caused by the March 14, 2020 incident," this is not the position taken by Plaintiff in his deposition or pleadings. Plaintiff has testified that he has continuing physical pain and injury and there has been no binding withdrawal of those claimed damages. The Plaintiff's prior claim of pain is inconsistent with his subsequent medical history and this also goes to credibility. The state of discovery and pleadings is that Plaintiff claims to have sustained orthopedic injuries, fractures and that his pain from those injuries continued through 2024. As a result, defendants will designate two additional experts: an orthopedic surgeon and a psychiatrist. A psychiatrist will evaluate the "garden variety" emotional distress claim with respect to prior and subsequent intervening causation, as well as Plaintiff's own contributory negligence.

Plaintiff argues that the parties did not report to the magistrate about an expert schedule. There were many difficulties in meeting and conferring with Plaintiff when he was self-represented. The timeline shows that Plaintiff's deposition was not completed until August 6, 2024, and that the deposition was originally noticed for February 7, 2023. The first session was conducted on April 14, 2023. The second session was conducted on August 6, 2024.

Fact discovery closed on November 8, 2024. Dkt. Nos. 145, 147, 152. Defendants do not oppose presenting for their own depositions, which may facilitate case assessment and possibly resolution Since Plaintiff has previously taken the position that his medical injuries are continuing, and his counsel still claims ongoing emotional distress, Defendants also request leave to subpoena updated medical and psychiatric records from the State Prison facilities, and the private providers who continue to treat Mr. Brooks. These are relevant to the affirmative defenses of causation and damages because there were identical claims of "Man Down" by plaintiff as described in the Declaration of Dr. Schapira.

Defense counsel had great difficulty in obtaining the State Prison health care records, which were provided in various voluminous and inconsistent iterations. All of those records were provided to Plaintiff. Dkt No. 142-1, 149, 154, 168. Defense counsel and her staff interacted with State Prison staff in an effort to provide the digital records and sent full copies of all written documents. With respect to the medical records, each State Prison facility maintains a set of records. Plaintiff Brooks has been transferred to different state prison facilities, most recently on September 14, 2026. Dkt No. 204. This led to difficulties in communication, and obtaining the medical and psychiatric files.

## IV. SETTLEMENT AND ADR

Both parties agree that the Local Rule 16-15 settlement requirement has been satisfied by the December 16, 2025 settlement conference before Magistrate Judge

Mircheff. (Dkt. No. 194.) The parties are nonetheless working to agree on a private mediator so that they can attempt further settlement discussions.

## V. PROPOSED SCHEDULE

The parties do not agree on a schedule.

**Plaintiff's position**

Plaintiff's position is that the case should proceed to trial expeditiously. The incident occurred in March 2020, the complaint was filed in March 2021, and dispositive motions have been decided. Plaintiff proposes a jury trial on March 15, 2027, and estimates that trial will take three days. Defendants seek a later date for the depositions, expert discovery, and mediation. Plaintiff's schedule accommodates the depositions and mediation, and expert discovery is unnecessary or, if allowed, can be completed by December 18, 2026. (See Section III & n.1.)

**Defendants' position**

Defense counsel requests a trial date on June 7, 2027.

Defense counsel requests an additional 90 days to effectively proceed in this case, without imposing on trial preparation in other matters. Defense counsel has a federal case set for jury trial on February 23, 2027, with a 7 day estimate. The additional twelve weeks will accommodate the calendars of the three defendants and defense counsel, and allow fact and allow for expert discovery, and a meaningful mediation.

Although this case was filed in *pro se* in 2021, on October 11, 2023, Deputy Lass and Lt. Fascio were added as defendants. Dkt No. 108. This Court referred the case to Plaintiff's counsel on April 28, 2016. On Thursday, June 4, 2026, Plaintiff's counsel accepted the referral and contacted defense counsel. Three days later, on Sunday, June 7, 2026, defense counsel personally sent Plaintiff's counsel a DropBox transfer of all filings in this case, including unredacted copies of all filings under seal. Defense counsel had also provided Plaintiff with copies of all medical and prison records throughout this case.

The parties' proposed dates, which follow the Court's Schedule of Pretrial and Trial Dates Worksheet, are below.

| **Event** | **Plaintiff's Proposed Date** | **Defendants' Proposed Date** |
|---|---|---|
| Trial (Jury) [Monday, 8:30 a.m.] | 03/15/2027 | 6/07/2027 |
| Estimated Duration | 3 days | 6 days |
| Final Pretrial Conference; Hearing on Motions in Limine [Friday, 11:00 a.m., at least 17 days before trial] | 02/26/2027 | 5/14/2027 |
| Last Date to Hear Motions to Amend Pleadings/Add Parties [Friday] | N/A | N/A |
| Non-Expert Discovery Cut-Off | 12/11/2026 (limited to depositions of Sanchez, Lass, and Ruiz; 6 hours total) | 1/18/2027 (to include depositions of defendants Sanchez, Lass and Ruiz, and to include updated medical records SDTs. |
| Expert Disclosure (Initial) | N/A (alternatively, 11/20/2026 for Defendants; see n.1) | 2/18/2027 |
| Expert Disclosure (Rebuttal) | N/A (alternatively, 12/04/2026; see n.1) | 2/28/2027 |
| Expert Discovery Cut-Off | N/A (alternatively, 12/18/2026; see n.1) | 3/15/2027 |
| Last Date to Hear Motions [Friday] | 01/08/2027 (non-dispositive motions only; Rule 56 motions already decided, Dkt. No. 181) | 4/2/2027 |

| **Event** | **Plaintiff's Proposed Date** | **Defendants' Proposed Date** |
|---|---|---|
| Deadline to Complete Settlement Conference [L.R. 16-15] | Satisfied (Dkt. No. 194) | Suggest mediation before Judge Dennis Landin (ret) with the first three hours conducted on the Central District mediation panel, to be followed by paid private sessions split between the parties. |
| ADR Procedure | See above | See above |
| Trial Filings (first round) | 02/05/2027 | 5/1/2027 |
| Trial Filings (second round) | 02/12/2027 | 5/15/2027 |

Dated: October 5, 2026

**LAW OFFICES OF DALE K. GALIPO**

*/s/ Cooper Mayne*
Cooper Mayne
Attorney for Plaintiff

Dated: October 5, 2026

**LAW OFFICES OF TORRES AND BRENNER**

*/s/ Anita S. Brenner*
Anita S. Brenner
Attorney for Defendants

## ATTESTATION

I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Cooper Mayne*
Cooper Mayne